UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Anuj Thapa,<br><br>Plaintiffs,<br><br>vs.<br><br>St. Cloud Orthopedic Associates, Ltd.,<br>and CentraCare Health System<br><br>Defendants. | Civil No.: |

## Complaint

Plaintiff, for his complaint and cause of action against the above-named Defendants, states and alleges as follows:

### Introduction and Parties

1. Anuj Thapa is twenty-two year-old resident of St. Cloud, and an undergraduate at St. Cloud State University. He is a citizen of Nepal and holds a Student Visa (F1) which started at the end of 2016.

2. In January of 2017, Mr. Thapa suffered permanent, disabling, and catastrophic damage to his left leg as a direct result of the negligence of Defendants.

3. St. Cloud Orthopedic Associates, Ltd. - hereinafter referred to as "St. Cloud Ortho" - is a corporation with its principal executive offices located in Stearns County, Minnesota.

4. St. Cloud Ortho claims to provide "the very best proven orthopedic healthcare treatments, technology, procedures, equipment, providers, and methodology" to the people of central Minnesota. It also claims there is "no aspect of quality orthopedic care" it can't provide.

5. As part of its business, St. Cloud Ortho provides the services of a variety of health care professionals, including orthopedic surgeons and "physician extenders", to patients at St. Cloud Hospital.

6. St. Cloud Hospital is owned and operated by CentraCare Health System, a corporation with its principal executive offices in Stearns County.

7. One of the orthopedic surgeons affiliated with St. Cloud Ortho in January of 2017 was Dr. Chad Holien. At all times that are relevant to this case, Dr. Holien was an agent, employee, partner, or shareholder of St. Cloud Ortho.

8. One of the "physician extenders" affiliated with St. Cloud Ortho in January of 2017 was a physician's assistant named William Paschke. At all times that are relevant to this case, Mr. Paschke was an agent, employee, partner, or shareholder of St. Cloud Ortho.

9. Upon information and belief, other agents, employees, partners or shareholders of St. Cloud Ortho provided care to Mr. Thapa in January of 2017.

10. Upon information and belief, agents, employees, partners, or shareholders of CentraCare Health System provided care to Mr. Thapa in January of 2017.

**Vicarious Liability**

11. St. Cloud Ortho is vicariously liable for any negligent medical care that its agents, employees, partners, or shareholders provided to Mr. Thapa. This includes, but is not limited to, any negligent care provided by Dr. Holien or Mr. Paschke.

2

12. CentraCare Health System is vicariously liable for any negligent medical care that its agents, employees, partners, or shareholders provided to Mr. Thapa while he was a patient at St. Cloud Hospital.

13. Dr. Holien and Mr. Paschke were ostensible agents of CentraCare Health System, and CentraCare Health System is therefore vicariously liable for any negligent medical care they provided to Mr. Thapa while he was a patient at St. Cloud Hospital.

14. CentraCare Health System has the right to control the means and manner of performance of Dr. Holien and Mr. Paschke.

15. CentraCare Health System controls the mode of payment of Dr. Holien and Mr. Paschke.

16. CentraCare Health System furnishes the material, tools, supplies, and equipment that Dr. Holien and Mr. Paschke use to care for patients at St. Cloud Hospital.

17. CentraCare Health System controls the premises of St. Cloud Hospital.

18. CentraCare Health System has the right to terminate Dr. Holien and Mr. Paschke's privileges to work at St. Cloud Hospital.

19. Dr. Holien is an employee of CentraCare Health System.

20. Mr. Paschke is an employee of CentraCare Health System.

**Jurisdiction**

21. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

22. Venue in the district is proper pursuant to 28 U.S.C. § 1391.

23. Upon information and belief, Defendants are subject to personal jurisdiction in the district arising out of their contacts with the State of Minnesota and this judicial district. Morever, Plaintiff's claims arising out of or are related to Defendants' contacts with the district and the State of Minnesota.

## Facts

24. Mr. Thapa was a healthy, fit, physically active 19-year old in January of 2017. He had just started attending St. Cloud State University.

25. On the evening of January 14, 2017, Mr. Thapa was playing indoor soccer. Another player slide-tackled him, and Mr. Thapa immediately felt severe pain his left leg and noted that it had become deformed. He was taken by ambulance to St. Cloud Hospital.

26. Mr. Thapa was evaluated in the St. Cloud Hospital emergency department, and imaging showed a severe fracture of his left leg. Dr. Holien, who upon information and belief was the on-call orthopedic surgeon for St. Cloud Hospital that evening, was called to evaluate him.

27. After examining Mr. Thapa and reviewing the imaging, Dr. Holien recommended surgery. Mr. Thapa consented to the surgery, and Dr. Holien performed it that night. He was assisted by PA Paschke. The surgery ended shortly before midnight, and Mr. Thapa was taken to recovery.

28. Through the night and into the next morning, Mr. Thapa experienced severe, difficult-to-control pain in his left lower leg. He also experienced numbness, a burning sensation, and reduced contraction of his muscles. Various providers of St. Cloud Ortho were aware of this.

29. Mr. Thapa was discharged around 5:30 pm. He was instructed to call a doctor if his symptoms worsened.

30. Upon information and belief, Mr. Thapa was examined by an agent or employee of CentraCare Health System as part of the discharge process.

31. Mr. Thapa returned to St. Cloud Hospital on January 21, six days after he was discharged. His symptoms had not worsened; they were as bad as they had been he was sent home, and he finally got to the point where he couldn't stand the pain any longer.

4

32. Dr. Matthew Hwang, another St. Cloud Ortho physician, took Mr. Thapa back to surgery at around 4:00 am on January 22. When he opened up Mr. Thapa's leg he discovered that Mr. Thapa had experienced acute compartment syndrome; the muscles in the anterior compartment of Mr. Thapa's leg were grey in color, with no contractility whatsoever.

33. Mr. Thapa has endured more than twenty surgeries, and has been left with severe, disabling, permanent damage to his left leg.

### Medical Negligence

34. Plaintiff re-alleges all paragraphs above.

35. Defendants departed from accepted standards of medical practice in providing care and treatment to Mr. Thapa. These departures include, but are not limited to, the failure to appropriately evaluate Mr. Thapa's symptoms, the failure to appropriately diagnose and treat Mr. Thapa's acute compartment syndrome, and the failure to appropriately discharge Mr. Thapa.

36. Defendants' departures from accepted standards of medical practice played a substantial role in bringing about Mr. Thapa's severe, permanent, and disabling injuries.

### Count II
### Negligent Nondisclosure

37. Plaintiff re-alleges all previous paragraphs.

38. Defendants did not provide appropriate informed consent to Mr. Thapa.

39. Defendants knew, or should have known, about the risks associated with discharging Mr. Thapa without further investigating the cause of his symptoms.

40. Defendants never informed Mr. Thapa about the risks associated with discharging Mr. Thapa without further investigating the cause of his symptoms.

5

41. The risks associated with discharging without further investigating the cause of symptoms like those Mr. Thapa had is information that a reasonable physician customarily provides to a patient about under similar circumstances.

42. A reasonable physician should know that the risk associated with discharging Mr. Thapa without further investigating the cause of his symptoms is information that a reasonable patient in Mr. Thapa's position would have regarded as significant.

43. If Mr. Thapa had been informed of the risks associated with going home without further investigation of the cause of his symptoms, he would have requested that he remain in the hospital until that further investigation could be done.

44. If Defendants had investigated Mr. Thapa's symptoms further before they discharged him, his compartment syndrome would have been diagnosed and treated and he would not have suffered a permanent disabling injury to his leg.

## Damages

45. As a direct and proximate result of Defendants' negligence, Mr. Thapa has incurred medical and related expenses in an amount to be proved at trial but presently estimated to be in an amount in excess of $75,000.

46. As a direct and proximate result of Defendants' negligence, Mr. Thapa will in the future incur medical and related expenses in an amount to be proved at trial but presently estimated to be in an amount in excess of $75,000.

47. As a direct and proximate result of Defendants' negligence, Mr. Thapa has incurred loss of earnings and loss of future earning capacity.

48. As a direct and proximate result of Defendants' negligence, Mr. Thapa has suffered, and will in the future suffer, significant pain, disability, disfigurement, loss of enjoyment of life, emotional distress, and other general damages in excess of $75,000.

## Demand for Judgment

WHEREFORE, Plaintiff requests a judgment against Defendants in an amount in excess of $75,000, together with costs, disbursements, interests, and such other and further relief as the Court deems just and appropriate under the circumstances.

Dated: September 19, 2019

CIRESI CONLIN LLP

By: _____
　　Brandon E. Thompson (#349173)

225 South Sixth Street
Suite 4600
Minneapolis, MN  55402
612-361-8200
bet@ciresiconlin.com

ATTORNEYS FOR PLAINTIFF

**Acknowledgment Required by Minn. Stat. § 549.211, Subd. 2**

The undersigned hereby acknowledges that, pursuant to Minn. Stat. § 549.211, subd. 2, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated:  September 19, 2019

CIRESI CONLIN LLP

By: _____
    Brandon E. Thompson (#349173)

225 South Sixth Street
Suite 4600
Minneapolis, MN  55402
612-361-8200
bet@ciresiconlin.com

ATTORNEYS FOR PLAINTIFF

8