## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Anuj Thapa,

                Plaintiff,

v.

St. Cloud Orthopedic Associates, Ltd., and
CentraCare Health System,

                Defendant.

Case No. 19-cv-2568 (TNL)

**ORDER**

Brandon Thompson, Ciresi Conlin LLP, 225 South Sixth Street, Suite 4600, Minneapolis, MN 55402 (for Plaintiff); and

Cecilie M. Loidolt, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., 81 South Ninth Street, Suite 500, Minneapolis, MN 55402[1] (for Defendant CentraCare Health System).

This matter is before the Court on Defendant CentraCare Health System's Motion for Judgement on the Pleadings (ECF No. 27) and Plaintiff's Motion for Leave to Amend Complaint. (ECF No. 46). The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 20). The Court has reviewed and considered all papers filed in connection with the motion. Based on the filings, record, and pleadings in this matter, the Court will deny the motion for judgment on the pleadings as moot and grant the motion for leave to amend.

---

[1] Different counsel represented CentraCare Health System at the time the motions were briefed and argued.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In January 2017, Plaintiff was injured during an indoor soccer game. (ECF No. 1, p. 4). He was taken by ambulance to St. Cloud Hospital, which is owned and operated by CentraCare Health ("CCH"). (*Id.*, pp. 2, 4). Because imaging showed that Plaintiff's left leg was severely fractured, the on-call orthopedic surgeon, Dr. Chad Holien, was brought in to evaluate Plaintiff. (*Id.*, p. 4). Dr. Holien is affiliated with St. Cloud Orthopedic Associates, Ltd. ("SCOA"). (*Id.*, p. 2). He performed surgery on Plaintiff that evening. (*Id.*, p. 4). Dr. Holien was assisted by physician's assistant William Paschke, who was affiliated with SCOA. (*Id.*, pp. 2, 4).

Following surgery, Plaintiff experienced severe pain in his lower left leg, numbness, a burning sensation, and reduced contraction of his muscles. (*Id.*, p. 4). He was discharged the next evening and told to call a doctor if his symptoms became worse. (*Id.*). A CCH employee examined Plaintiff before discharge. (*Id.*).

Approximately six days later, Plaintiff returned to St. Cloud Hospital because his symptoms had not improved, and he could no longer bear the pain. (*Id.*). A second SCOA orthopedic surgeon operated on Plaintiff and discovered that he had experienced "acute compartment syndrome." (*Id.*, p. 5). Plaintiff has since had more than 20 surgeries and has suffered "severe, disabling, permanent damage to his left leg." (*Id.*).

Plaintiff alleges that CCH is "vicariously liable for any negligent medical care that its agents, employees, partners, or shareholders provided to [him] while he was a patient at St. Cloud Hospital." (*Id.*, p. 3). He further alleges that CCH is vicariously liable for any negligent care provided by Dr. Holien and Paschke because they were ostensible agents of

2

CCH. (*Id*.). In support of these allegations, Plaintiff notes that CCH had the right to control the means and manner of the performance of Dr. Holien and Paschke; controlled the mode of payment to both individuals; furnished the material, tools, supplies and equipment that both individuals used to care for patients; controlled the premises of St. Cloud Hospital; and had the right to terminate both individuals' privileges to practice at the St. Cloud Hospital. (*Id*.).

CCH answered the complaint. It then moved for judgment on the pleadings. The matter was argued and taken under advisement on April 15, 2020. On April 24, 2020, Plaintiff moved for leave to amend his complaint. (ECF No. 46).

Plaintiff's proposed amended complaint contains additional allegations in support of his vicarious liability claims. With regard to his respondeat superior claim, he alleges that CCH has the right to determine what patients Dr. Holien and Paschke treat; what procedures and care Dr. Holien and Paschke may provide; the schedule by which those individuals perform those procedures; when to "summon" both for emergency care; what "facts, medical history, circumstances, test results, and other details Dr. Holien may discuss with a patient;" what imaging is performed before Dr. Holien and Paschke treat a patient; and what quality control and other surgical safety procedures they must follow. (ECF No. 50, pp. 20-22). CCH also provides operating suites and recovery rooms that Dr. Holien and Paschke use to treat patients and controls the compensation model by which both providers are paid. (ECF No. 50, p. 21, 23).

Regarding the apparent authority claim, Plaintiff alleges that CCH represented that a patient could obtain emergency services at trauma care at the St. Cloud Hospital; that

CCH referred to the emergency care provided at the hospital as provide by CCH's own orthopedic specialists; that CCH did not inform patients that it was not responsible for any negligent actions of physicians or physician assistants providing emergency orthopedic care; and that CCH required Plaintiff to sign a form before surgery that was entitled "St. Cloud Hospital Consent for Surgery and/or Invasive Procedure" and that did not inform Plaintiff that Dr. Holien was not an employee of the St. Cloud Hospital. (ECF No. 50, pp. 24-25). Plaintiff also alleges that he relied on CCH's endorsement of the competency, care, and experience of Dr. Holien and Paschke. (*Id*., p. 26). Finally, he alleges that CCH listed both providers on its website, either under "Our Physician Assistant Team" or "Our Doctors." (ECF No. 50, pp. 25-26).

CCH opposed the motion to amend. The Court heard argument on that motion on May 14, 2020. The Court took the matter under advisement following the conclusion of that hearing.

## II.    ANALYSIS

Once 21 days have passed after service of a responsive pleading, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Although leave to amend 'shall be freely given when justice so requires,' *see* Fed. R. Civ. P. 15(a), plaintiffs do not have an absolute or automatic right to amend." *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005) (citing *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002)). The Court may deny a party's request for leave to amend only "if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure

to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008)). "[A] motion to amend should be denied on the merits 'only if it asserts clearly frivolous claims or defenses.'" *Becker v. Univ. of Nebraska at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999) (quoting *Gamma–10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994)). In general, motions for leave to amend under Rule 15 may only be denied in "limited circumstances." *Roberson v. Hayti Police Dept.,* 241 F.3d 992, 995 (8th Cir. 2001).

### A. Undue Delay

CCH first argues that Plaintiff's motion will cause undue delay. In a motion for leave to amend under Rule 15, undue delay alone "is insufficient to deny leave to amend a complaint." *IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*, 326 F.R.D. 513, 527 (D. Minn. 2018). Leave to amend may only be denied if the delay results in unfair prejudice to the non-moving party. *Id*. Here, the primary prejudice identified by CCH is the fact that it already filed and argued a motion for judgment on the pleadings, which it contends should be considered before the motion for leave to amend. CCH also argues that it is prejudiced by having to incur the time and expense to respond to the motion for leave to amend while the motion to dismiss is pending.

CCH's reasoning is unavailing. To begin, the general rule is that courts should decide motions for leave to amend before Rule 12 motions. *Subramanian v. Tata Consultancy Servs. Ltd.*, 2018 WL 8754121, at *1 (D. Minn. Aug. 6, 2018). CCH claims

that this case is an exception to that rule, citing to *Platte Valley Wyo-Braska Beet Growers Assn. v. Imperial Sugar Co.*, 100 Fed. App'x 717 (10th Cir. 2004) and several other cases in this district that rely on it. In *Platte Valley*, the Tenth Circuit held that, by waiting to move for leave to amend until after arguments on a motion to dismiss were completed, the plaintiff acted with undue delay. *Id.* at 720. CCH suggests the same logic should apply here.

There are important differences between this case and *Platte Valley*. In particular, the motion to amend in *Platte Valley* was brought following the conclusion of arguments in a Rule 12(b)(6) motion, which in the Court's experience, is typically litigated and resolved before the pretrial scheduling conference is conducted and a pretrial scheduling order is issued. Here, in contrast, CCH moved for judgment on the pleadings more than a month after the Court issued its pretrial scheduling order and set a May 1, 2020 deadline for motions to amend. (ECF No. 17, p. 3). The Court cannot conclude that Plaintiff acted with undue delay by bringing a motion that was timely under the Court's own orders.

As a result, any prejudice that CCH has suffered is partly of its own doing. The arguments that CCH made in its Rule 12(c) motion could easily have been raised in a Rule 12(b)(6) motion, which would have been heard before the pretrial scheduling conference. Instead, CCH chose to file a Rule 12(c) motion knowing that the Court had already given Plaintiff until May 1 to move for leave to amend.

Furthermore, for the reasons discussed below, CCH has not demonstrated that either of the challenged claims is so deficient that there is no set of facts that Plaintiff could plead to establish a plausible claim for relief. As a result, were the Court to grant the motion for

judgment on the pleadings, the Court would still either dismiss the complaint without prejudice (thus providing Plaintiff an opportunity to refile those claims) or provide Plaintiff the opportunity to replead those claims so that the matter could be decided on the merits. *See Physician Specialty Pharmacy, LLC v. Prime Therapeutics, LLC*, No. 18-cv-1044, 2019 WL 1748718, at *2 (D. Minn. Apr. 19, 2019) (explaining that it is common for courts to provide at least one opportunity to replead in order to address deficiencies identified in decision granting motion to dismiss). As a result, CCH will have suffered no prejudice by the Court considering the motion for leave to amend first, as that motion would still need to be considered and argued regardless of how the Court decided the Rule 12(c) motion.

Finally, the Court notes that, while the timing of the plaintiff's motion in *Platte Valley* was the primary reason that court denied the motion for leave to amend, the court also considered the fact that the motion suffered from other deficiencies, including failure to meet and confer and failure to provide a copy of the proposed amended complaint. 100 Fed. App'x at 720. Plaintiff's motion does not suffer from these deficiencies. This further weighs in favor of the motion for leave to amend.

For the reasons set forth above, CCH has failed to establish that it suffered prejudice from the motion for leave to amend. As a result, the Court will not deny the motion on the grounds that it would cause undue delay.

### B. Futility

CCH also asks the Court to deny the motion to amend on the grounds that it is futile. A motion for leave to amend a pleading is futile when the amended pleading would not be able to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Zutz*

*v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). In doing so, the court must draw reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (citation and internal quotations omitted). Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). Complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

### 1. Respondeat Superior Claim

CCH first argues the respondeat superior claim is futile. Because this is a diversity case, the Court applies Minnesota substantive law to resolve this dispute. *Sletten*, 782 F.3d at 934. Determining whether a person is an employee or independent contractor is based on several factors, most notably: "(1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the

8

control of the premises where the work is done; and (5) the right of the employer to discharge." *Guhlke v. Roberts Truck Lines*, 128 N.W.2d 324, 326 (Minn. 1964). CCH argues that this claim fails because Plaintiff has alleged that CCH provided Dr. Holien and Paschke privileges to practice at the St. Cloud Hospital.

The Court disagrees. It is true that, while considering a claim for negligent credentialing, the Minnesota Supreme Court stated the granting of hospital privileges was "normally" insufficient to establish an employer/employee relationship between the provider and hospital. *See Larson v. Wasemiller*, 738 N.W.2d 300, 302 (Minn. 2007). But the Minnesota Supreme Court did not hold that by granting hospital privileges to a provider, a jury was categorically precluded from finding a provider to be an employee of the hospital under the doctrine of respondeat superior. *See id*. Instead, as one other Judge has already done in this District, the Court must still consider the remaining factors set forth above to determine whether it is plausible for a factfinder to determine an employee/employer relationship exists. *See Damgaard v. Avera Health*, 108 F. Supp. 3d 689, 696-97 (D. Minn. 2015) (considering other factors, including employment contract, compensation, termination policy, and fact that hospital listed provider on its website to determine if provider was employee). In this case, Plaintiff has alleged sufficient facts to establish a plausible employer/employee relationship between CCH and the two providers.

First, regarding the means and manner of the providers' performance, Plaintiff has alleged that, CCH determined (1) what imaging was performed for the providers; (2) what procedures and patient care they could provide; (3) how their patients were prepared for surgery; and (4) what policies and procedures the providers must follow. Second, as to the

manner of payment, Plaintiff has alleged that CCH managed the compensation model by which Dr. Holien and Paschke are paid and that CCH was responsible for billing patients for the tools, equipment, medication and supplies that both providers used. Third, regarding the furnishing of material or tools, Plaintiff has alleged that CCH determines what tools and materials to provide for use in surgery and provides the operating rooms, imaging machinery, monitoring devices, operating tables and other equipment necessary for surgery. Finally, Plaintiff has alleged that CCH controls the premise where the work is done by retaining the right to control which providers may enter and use the hospital.

It is true that, even as pled in the amended complaint, not all of the factors set forth above support the existence of an employer/employee relationship. Plaintiff has not, for instance, alleged that CCH has the right to terminate either provider from St. Cloud Orthopedic Associates. But no factor in this analysis is dispositive. *Damgaard*, 108 F. Supp. 3d at 697. And at this stage of litigation, the Court need only conclude the facts alleged establish a plausible claim for relief. *Sletten*, 782 F.3d at 934. Here, Plaintiff has pled sufficient facts to establish that four of five factors support an employer/employee relationship. At this stage of litigation, that is sufficient for the Court to conclude that Plaintiff has alleged a plausible respondeat superior claim. The motion for leave to amend is therefore not futile with regard to this claim.

### 2. Ostensible Agency Claim

CCH argues the motion for leave to amend is also futile with regard to Plaintiff's apparent authority claim. The doctrine of vicarious liability makes "a principal liable for the act of an agent committed in the course and within the scope of the agency and not for

10

a purpose personal to the agent." *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 535 (Minn. 1992). An agent can bind a principal if it has apparent authority. *Duluth Herald & News Tribune v. Plymouth Optical Co.*, 176 N.W.2d 552, 555 (Minn. 1970).

The Minnesota Supreme Court has never considered whether a hospital could be vicariously liable for the alleged negligence of a health care provider under the doctrine of apparent authority. The Minnesota Court of Appeals, however, has held a hospital can be held vicariously liable for a physician's acts only if the physician is an employee of the hospital. *Popovich v. Allina Health Sys.*, No. A18-1987, 2019 WL 3000755, at *3-*4 (Minn. App. July 8, 2019), *rev. granted* (Minn. Sept. 25, 2019). The Minnesota Supreme Court has granted review of that decision. *Id*. It is not clear when the Minnesota Supreme Court will issue its decision.

### a. The Minnesota Supreme Court is likely to recognize Plaintiff's ostensible agency claim

When the state's highest court has not addressed the question at issue, federal courts are bound to apply the rule that the state's highest court would likely apply. *Cassello v. Allegiant Bank*, 288 F.3d 339, 340 (8th Cir. 2002). Federal courts are not bound by the decisions of intermediate appellate courts. *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburg, Pa.*, 621 F.3d 697, 707 (8th Cir. 2010). This is an important distinction in a case like this.

The Minnesota Supreme Court is the state's highest court and the Minnesota Court of Appeals is the state's intermediate appellate court. As the *Popovich* court specifically noted, the Minnesota Court of Appeals is an error-correcting court that is bound by its

published decisions. 2019 WL 3000755, at *4. Thus, the *Popovich* court based its decision in significant part on the fact that the Minnesota Court of Appeals previously held in a published decision (and several unpublished decisions) that hospitals were not vicariously liable for the negligent acts of non-employee physicians. *Id*. at *3-*4 (citing *McElwain v. Van Beek*, 447 N.W.2d 442 (Minn. App. 1989), *rev. denied* (Minn. Dec. 20, 1989)). This result was consistent with the Minnesota Court of Appeals' mandate, which leaves it "without authority to change the law." *Id*. at *4 (citing *Lake George Park, L.L.C. v. IBM Mid-Am. Emps. Fed. Credit Union*, 576 N.W.2d 463, 466 (Minn. App. 1998), *rev. denied* (Minn. June 17, 1998)). Thus, true to its mandate as an error-correcting court, the *Popovich* court restrained its decision to the established precedent before it.

And just as the *Popovich* court was restrained by its mandate, this Court must apply the rule that it believes the Minnesota Supreme Court would apply. *See Cassello*, 288 F.3d at 340. The Minnesota Supreme Court is not bound by the decisions of the Minnesota Court of Appeals. It also has the authority to extend or modify the common law. *See Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998) ("This court has the power to recognize and abolish common law doctrines."). When determining whether the existing common law should be changed or extended, the Minnesota Supreme Court will consider if such change is necessary in light of evolving societal conditions and in order for persons to protect and enforce effectively their legal rights. *Id*. at 234 (citing *Tuttle v. Buck,* 119 N.W. 946, 947 (Minn. 1909)). It will ultimately be the Minnesota Supreme Court's prerogative to consider other possible factors when deciding to follow the precedent upon

which the *Popovich* court based its decision.[2] Against this backdrop, the question for the Court is whether the Minnesota Supreme Court will extend existing Minnesota common law to make it possible for hospitals to be vicariously liable for the negligent acts of non-employee physicians. In this case, for the reasons below, the Court concludes the Minnesota Supreme Court is likely to modify the common law to permit such lawsuits.[3]

To begin, when assessing any change to the common law, the Minnesota Supreme Court looks to the law of other states. *Id*. Nearly every state to consider the issue has declined to exempt hospitals from liability under the doctrine of apparent authority. *See Estate of Cordero ex rel. Cordero v. Christ Hosp.*, 958 A.2d 101, 105 (N.J. App. Div. 2008). As a result, the Minnesota Supreme Court, as it has done before, is likely to "join the majority of jurisdictions" and hold that hospitals may be liable under the doctrine of vicarious liability. *See Lake*, 582 N.W.2d at 235 (recognizing tort of invasion of privacy largely because Minnesota was one of only three states not to recognize this tort in either common law or state statute). This alone could be reason for the Court to conclude the Minnesota Supreme Court will take a different approach in deciding *Popovich*.

But in addition, the extension of common law that Plaintiff proposes is modest jurisprudentially because the Minnesota Supreme Court has long since recognized the general doctrine of apparent authority. *See Larson v. Great Northern Railway Co.*, 133

---

[2] In addition to the factors outlined in *Lake* or *Tuttle*, the Minnesota Supreme Court could also look to the magnitude of impact caused by any change to stare decisis; extent of reliance on prior case law; soundness of precedential legal reasoning; consistency with comparable legal doctrine; erosion of the bases for prior decisions; clarity in, and the temporal length of, any trend favoring the contending schools of legal thought; and comparison of the utility in maintaining laws that provide predictability in order for persons to plan their most important affairs in advance, versus perpetuating harms that stem from cases that may have been wrongly decided.

[3] Of course, should the Minnesota Supreme Court decide otherwise, the Court expects the parties to work together to arrange for the orderly dismissal of this claim.

N.W. 867 (Minn. 1911). It has applied the doctrine in several other industries, including railroads, *id*., insurance, *Nehring v. Bast*, 103 N.W.2d 368, 371 (Minn. 1960), and fertilizer. *Lindstrom v. Minn. Liquid Fertilizer Co.*, 119 N.W.2d 855, 862 (Minn. 1963). It has also applied that doctrine in actions sounding in tort. *Frye v. Anderson*, 80 N.W.2d 593 (1957). The Court has little reason to expect that the Minnesota Supreme Court will recognize an exception in the case of hospitals, particularly in light of the fact that the overwhelming majority of the jurisdictions to have considered the issue have declined to adopt such an exception.

Furthermore, there is strong argument that the elimination of this exception is particularly important given the unique dynamics of the hospital-physician relationship. The apparent authority doctrine is imposed by equity; it is created to protect third parties from the unauthorized acts of an apparent agent. 3 Am. Jur. 2d Agency § 71. A patient taken to a hospital, particularly in an emergency setting, is not seeking care from a particular physician. Instead, the patient is relying on the hospital to provide the necessary staff, facilities, and materials to ensure the patient receives proper treatment, and fast. It is reasonable for the patient to assume that when taken to a hospital, the doctors and staff who see the patient are acting on behalf of the hospital. *See Mduba v. Benedictine Hosp.*, 52 A.D. 2d 450, 453 (N.Y. App. Div. 1976). The patient seeking emergency medical care should not be expected to untangle the labyrinthian system wherein the treating physician and other care providers have signed a contract with the hospital that makes them independent contractors. Nor should the patient be expected to enquire of the physician or provider's employment status before receiving care at a hospital, so that the patient may

14

consider whether that status would inhibit his or her ability to recover for the physician's negligent acts.

The Court acknowledges that the Minnesota Court of Appeals has adopted a different position. But the Minnesota Court of Appeals was exercising proper discipline as an error-correcting court that had already issued a published decision on the matter. This Court must approach the issue from the perspective of the Minnesota Supreme Court. Given the fact that most jurisdictions to have considered the matter have declined to adopt an exception to the apparent authority doctrine in the context of the hospital/provider relationship, the Minnesota Supreme Court's broad application of the apparent authority doctrine elsewhere, and the unique complexities of the health care industry, this Court concludes the Minnesota Supreme Court will recognize that hospitals may be held vicariously liable for the negligent acts of health care providers. The Court therefore respectfully declines to deny the motion for leave to amend on the grounds that Minnesota has not recognized such a claim in the hospital-provider context.

### b. Plaintiff has pled sufficient facts to establish a plausible ostensible agency claim

CCH contends that even if the Minnesota Supreme Court applies the doctrine of apparent authority to hospitals, Plaintiff has still failed to allege sufficient facts to support a plausible claim for relief. The Court expects the Minnesota Supreme Court would look to other states' approaches in determining the appropriate standard to plead an apparent authority claim in this context. *See Lake*, 582 N.W.2d at 233.

States have taken many different approaches. Some have held that a hospital may be liable so long as a patient could reasonably assume that a doctor was an employee of the hospital. *See Bynum v. Magno*, 125 F. Supp. 2d 1249, 1265 (D. Haw. 2000) (citing to Wisconsin and Illinois law). In those states, patients are entitled to assume that doctors working at a hospital, particularly in the emergency room, are employees of the hospital. *Id*. No express representation by the hospital is required. *Id*. Other jurisdictions, however, require that a plaintiff establish that "(1) he/she had a reasonable belief that physician was [an] agent/employee of the hospital, (2) the belief was generated by some affirmative act of the hospital or physician, and (3) the patient justifiably relied on the representation of authority." *Id*. (citing Texas and Connecticut law). In this case, the Court need not decide what standard the Minnesota Supreme Court is likely to adopt. Under either standard, Plaintiff has pled sufficient facts to establish a plausible claim for relief.

The first standard is easily satisfied. Plaintiff has alleged that he was taken to a hospital, where he was treated by both providers and provided no notification that either provider was not an employee of the hospital. His assumption that both providers, who were caring for patients in the hospital, were employees of the hospital was therefore reasonable. *See id*. As to the second standard, Plaintiff has alleged that he relied on the hospital to assign him a provider; that he relied on CCH's endorsement of the skills and competence of the provider assigned to him; and that his belief was generated by the affirmative acts of CCH, including the fact that CCH had represented to the public that it provided emergency room services and referred to the two providers here as members of "Our Physician Assistant Team," "CentraCare's orthopedics specialists" and "Our

Doctors." (ECF No. 50, pp. 25-26). It is plausible for a factfinder to conclude that Plaintiff's reliance on these representations was reasonable and justified. The allegations in Plaintiff's proposed amended complaint satisfy the second standard as well.

Put another way, because Plaintiff has demonstrated that he "look[ed] to the hospital, as opposed to the individual practitioner, to provide competent medical care," Plaintiff has alleged sufficient facts to establish a plausible apparent authority claim. *Clark v. Southview Hosp.,* 628 N.E.2d 46, 53 (Oh. 1994); *see also Simmons v. Tuomey Reg'l Med. Ctr.*, 533 S.E.2d 312, 320 (2000) (explaining that the *Clark* approach would likely "be followed by the many other courts using the apparent agency approach in this setting"). For the forgoing reasons, the Court will grant Plaintiff's motion for leave to amend and deny CCH's motion for judgment on the pleadings as moot.

## III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant CentraCare Health System's Motion for Judgement on the Pleadings (ECF No. 27) is **DENIED** as moot.

2. Plaintiff's Motion for Leave to Amend Complaint (ECF No. 46) is **GRANTED**. Plaintiff shall file his amended complaint within 14 days of the date this Order is filed.

3. The partial stay of discovery ordered by the Court on April 15, 2020 (ECF No. 45) is **VACATED.**

4. All prior consistent orders remain in full force and effect.

5. Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Date: July 7, 2020                                             *s/ Tony N. Leung*
                                                              Tony N. Leung
                                                              United States Magistrate Judge
                                                              District of Minnesota

                                                              *Thapa v. St. Cloud Orthopedic*
                                                              *Associates, Ltd., et al.*
                                                              Case No. 19-cv-2568 (TNL)