UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Anuj Thapa, | Case No. 19-cv-2568 (TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| St. Cloud Orthopedic Associates, Ltd., and CentraCare Health System, | |
| Defendant. | |

Brandon Thompson and Rachel Louise Barrett, Ciresi Conlin LLP, 225 South Sixth Street, Suite 4600, Minneapolis, MN 55402 (for Plaintiff);

Chad A. Staul and Steven R. Schegman, Quinlivan & Hughes, PA, PO Box 1008, St. Cloud, Minnesota, 56302 (for Defendant St. Cloud Orthopedic Associates, Ltd.); and

Amber N. Garry and Cecilie M. Loidolt, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., 81 South Ninth Street, Suite 500, Minneapolis, MN 55402 (for Defendant CentraCare Health System).

This matter is before the Court, Magistrate Judge Tony N. Leung, on Plaintiff's Motion for Partial Summary Judgment (ECF No. 65). The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 20.) The Court has reviewed and considered all papers filed in connection with the motion. Based on the filings, record, and pleadings in this matter, the Court will deny Plaintiff's motion.

## I.  PROCEDURAL HISTORY

Plaintiff Anuj Thapa filed suit on September 20, 2019. (ECF No. 1.) Defendant CentraCare Health System ("CentraCare") answered the complaint. (ECF No. 9.) It then moved for judgment on the pleadings. (ECF No. 27.) The matter was argued and taken under advisement on April 15, 2020. (ECF No. 45.) On April 24, 2020, Plaintiff moved for leave to amend his complaint to add additional allegations in support of his vicarious liability claims against CentraCare. (ECF No. 46.) The Court granted Plaintiff's motion for leave to amend his complaint and denied as moot CentraCare's motion for judgment on the pleadings. (ECF No. 59.) Plaintiff then filed his First Amended Complaint on July 7, 2020. (ECF No. 60.)

Relevant to this motion, Plaintiff alleges that CentraCare is vicariously liable under the doctrine of apparent authority for the negligent care provided by Dr. Chad Holien ("Dr. Holien") and physician's assistant William Paschke ("PA Paschke"), two medical professionals working at the St. Cloud Hospital ("Hospital") and employees of Defendant St. Cloud Orthopedic Associates, Ltd. ("St. Cloud Orthopedic"). (Am. Compl. ¶ 55, ECF No. 60.)

At the time the Court issued its order allowing Plaintiff to amend his complaint, the Minnesota Supreme Court had granted review of a case to determine whether a hospital could be held vicariously liable for the alleged negligence of a health care provider under the theory of apparent authority. (*See* ECF No. 59 at 11.) On July 29, 2020, the Minnesota Supreme Court held as a matter of first impression that a plaintiff may assert such a claim. *Popovich v. Allina Health Sys.*, 946 N.W.2d 885, 895 (Minn. 2020).

Plaintiff now brings his motion for partial summary judgment that Dr. Holien and PA Paschke acted with the apparent authority of CentraCare in providing care for Plaintiff, and that, should their actions be found negligent by the jury at trial, CentraCare will be vicariously liable for their professional negligence as a matter of law. (Mot. at 1.) Plaintiff argues that the evidence in this case establishes that both elements of the test set forth in *Popovich* have been met; CentraCare can raise no genuine issue of material fact regarding apparent agency; and Plaintiff is entitled to judgment as a matter of law that Dr. Holien and PA Paschke acted as CentraCare's apparent agents when they provided emergency orthopedic care to Plaintiff. (*Id.* at 1-2.)

Defendant CentraCare opposes the motion. A hearing was held and the motion taken under advisement. (ECF No. 86.)

## II.   ANALYSIS

### A.  Legal Standard

Under Rule 56(a), courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) ("The

nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'") (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). In considering such a motion, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). But "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (quotation and citation omitted); *see also Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) ("A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.").

### B. Facts

Plaintiff moved to St. Cloud from Nepal in late December 2016. (Ex. D. to Barrett Decl. (hereinafter "Thapa Dep.") 16:3-4, ECF No. 69-4; *see also* Thapa Aff. ¶ 2, ECF No. 68.) On January 14, 2017, while playing indoor soccer with friends, Plaintiff was involved in a slide-tackle and injured his left leg. (Thapa Aff. ¶ 3.) An unknown individual onsite called 911. (Thapa Aff. ¶ 4.) Paramedics placed Plaintiff on a stretcher and carried him to the ambulance. (*Id.*) When speaking to the paramedics, Plaintiff did not ask to be brought to any specific hospital, did not care to which hospital he would be taken, and did not request to be treated by any specific doctor, as he was focused on the fact that his leg was broken and wanted to go to an emergency room "immediately." (*Id.*; *see also* Thapa

4

Dep. 17:11-14.)  Plaintiff was brought to the Hospital via ambulance.  (Thapa Dep. 17:4-5.)  The Hospital is owned and operated by CentraCare.  (CentraCare's Answer to Am. Compl. ("CentraCare's Answer") ¶ 5, ECF No. 62.)

Once Plaintiff reached the Hospital, he did not ask for a particular health care provider.  (Thapa Aff. ¶¶ 5-8.)  He expected that "the hospital would provide doctors and nurses to take care of [him]" when he arrived and did not think he had a choice of which doctor would examine his leg.  (*Id.* ¶¶ 5-6.)  Plaintiff believed Dr. Holien and PA Paschke were employees of the Hospital.  (*Id.* ¶¶ 7-8.)  No one at the Hospital informed him otherwise.  (*Id.*)  Plaintiff did not do any research, online or otherwise, on the Hospital or CentraCare prior to his injury and subsequent care at the Hospital in January 2017.  (Thapa Dep. 17:6-10, 17:25-18:8.)

Dr. Holien and PA Paschke provided Plaintiff with emergency orthopedic healthcare services, including surgery.  (Ex. A to Barrett Decl. at 2-3, ECF No. 69-1; *see also* Ex. B to Barrett Decl., ECF No. 69-2.)  Dr. Holien and PA Paschke are employed by St. Cloud Orthopedic, not CentraCare.  (*See* CentraCare's Answer ¶ 9; St. Cloud Orthopedic's Am. Answer to Am. Compl. ¶ V, ECF No. 85.)  Each serves as an independent contractor and provides emergency medical services at the Hospital pursuant to a contract between the Hospital and St. Cloud Orthopedic.  (Ex. G to Garry Decl. (hereinafter "Luitjens Dep.") 7:11-8:12, ECF No. 74-1 at 65-75;[1] *see also* Ex. C to Barrett

---

[1] CentraCare filed its exhibits under one ECF number.  For clarity, the Court provides the ECF pagination at which each exhibit may be found.

Decl. at 7-33, ECF No. 69-3 (Master Services Agreement between the Hospital and St. Cloud Orthopedic).)

At the time of Plaintiff's injury, CentraCare advertised the emergency healthcare services of the Hospital to the public via online or digital media. (Ex. C to Barrett Decl. at 1.) Specifically, CentraCare advertised the following to the public: (1) it provided trauma fracture care among its emergency services available at the Hospital; (2) if a patient was experiencing an orthopedic emergency, the Hospital provided "superior emergency services, state-of-the-art technology and extensive clinical expertise" in trauma care; (3) the Hospital was the "lead trauma facility" in the service area; (4) the Hospital's Emergency Trauma Center was 'the region's most comprehensive facility of its kind;" (5) the Hospital's emergency department was a place with "the technology and skilled professionals to meet the needs of the region;" (6) the Hospital's emergency department was "committed to providing patients with the highest quality care in the safest and most effective manner possible;" (7) the Hospital was a location where members of the public could seek emergency treatment from qualified medical personnel; and (8) the Hospital's emergency department was staffed 24 hours a day, 7 days a week with "expert care." (*Id.* at 1-3.)

CentraCare also took certain steps to inform the public that independent contractors are not Hospital employees. (*See, e.g.*, Ex. H to Garry Decl. (hereinafter "Schnettler Dep.") 13:11-15:9, ECF No. 74-1 at 76-97.) Dr. Holien and PA Paschke each have individual pages on CentraCare's public website. (Ex. D to Garry Decl., ECF No. 74-1 at 58-59.) Under a picture of each provider on the website is a heading that says, "Contact

Information," and lists St. Cloud Orthopedic and its address and phone number. (*Id.*; *see also* Schnettler Dep. 32:10-37:15.) Dr. Holien and PA Paschke also wear badges while working. (Ex. E to Garry Decl., ECF No. 74-1 at 60-63; *see also* Schnettler Dep. 45:16-46:13, 46:25-47:7.) From top to bottom, the badges read: (1) CentraCare; (2) St. Cloud Hospital; (3) the provider's name; (4) St. Cloud Orthopedics. (*Id.*) Dr. Holien and PA Paschke also wear white lab coats with the St. Cloud Orthopedics logo while working at the Hospital. (Ex. F to Garry Decl., ECF No. 74-1 at 64; *see also* Schnettler Dep. 46:19-24.)

The Hospital offered no choice to Plaintiff in choosing his care providers while he was being treated for his emergency orthopedic needs. (Ex. C to Barrett Decl. at 4.) Pursuant to the contract between the Hospital and St. Cloud Orthopedic, St. Cloud Orthopedic selected Dr. Holien and PA Paschke at the relevant time and they were contracted to work in the Hospital. (*Id.*)

**C. Analysis**

The parties do not dispute that the substantive law of the State of Minnesota controls in this diversity action. *See Gen. Elec. Capital Corp. v. Union Planters Bank, N.A.*, 409 F.3d 1049, 1053 (8th Cir. 2005) ("In diversity cases, we apply the substantive law of the state in which the district court sits."). The Court thus looks to the Minnesota Supreme Court's decision in *Popovich*, which allows a plaintiff to hold a hospital liable for the actions of independent contractors providing emergency care under the doctrine of apparent authority. 946 N.W.2d at 885. The Minnesota Supreme Court held in *Popovich* that:

> [A] plaintiff states a claim on a theory of apparent authority where (1) the hospital held itself out as a provider of emergency medical care; and (2) the plaintiff looked to the hospital for care and relied on the hospital to select the personnel to provide services to the plaintiff.

*Id.* at 897. The test involves "two basic elements: holding out and reliance." *Id.*

Plaintiff argues that a "straightforward application of the *Popovich* decision to this case" would settle the vicarious liability matter as "all evidence on the issue reveals there is no credible argument that Dr. Holien and Mr. Paschke were not CentraCare's apparent agents." (Mem. in Supp. at 6, ECF No. 67.) The Court disagrees.

First, the *Popovich* ruling was made at the motion to dismiss stage, not at the summary judgement stage. *See* 946 N.W.2d at 889. The Minnesota Supreme Court summarized the scope of its decision as follows:

> The merits of Popovich's medical malpractice claims are not before us. Instead, the task before us is two-fold. First, we must decide whether Popovich *may bring a claim* against Allina to hold Allina vicariously liable for the medical malpractice of an independent contractor based on a theory of apparent authority. If the answer to that question is "yes," we must determine the proper legal standard for apparent legal authority in this context.

*Id.* at 890 (emphasis added); *see also id.* at 898 ("We therefore hold that a plaintiff *states a vicarious liability claim* against a hospital for the professional negligence of independent contractors in the hospital's emergency room based on a theory of apparent authority if . . . .") (emphasis added)). The *Popovich* Court did not find Allina vicariously liable for the actions of the practitioners, and merely gave plaintiff in that case (and future plaintiffs) an

8

avenue with which to hold hospitals vicariously liable based on apparent authority under certain factual circumstances.

Second, the *Popovich* Court did not hold hospitals strictly liable for the actions of their independent contractors when they provide emergency medical care. *See id.* at 895-98. The record before the Court establishes that Plaintiff was transported to the Hospital following a serious injury for which he received emergency medical care by two of the Hospital's independent contractors. He was not offered a choice of his provider. CentraCare advertises the Hospital's emergency medical healthcare services, including orthopedic emergency medical services. CentraCare also takes steps to indicate certain providers are independent contractors, such as listing such professionals' employers on its website and on such professionals' identifications worn at the Hospital. To find at this juncture that there is no genuine issue of material fact for the jury to decide, however, would lead "effectively, either [to] strict liability or a close relative of strict liability" in nearly any case where an individual is treated in an emergency room setting by an independent contractor. *Id.* at 901 (Anderson, J., dissenting).

The *Popovich* Court left room for the fact-finder—in this case, a jury—to apply the two elements when determining whether a hospital may be held vicariously liable in medical malpractice cases involving independent contractors. As to the first element, "whether the hospital represented itself in the community as a location where members of the public could seek emergency treatment from a qualified medical professional," the court wrote that other court's applying this test should focus on "*the fact-finder's analysis on the hospital's representations to the public[.]*" *Id.* at 897 (emphasis added). As to the

9

second "reliance" element, the court wrote, "[s]pecifically, *the fact-finder* should determine if the plaintiff relied on the hospital to select the physician and other medical professionals to provide the necessary services." *Id.* at 898 (emphasis added).

As to both elements of the test for vicarious liability under the doctrine of apparent authority as established in *Popovich*, the Court finds that there are genuine issues of material fact. First, as set forth above, Defendants have raised genuine issues of material fact as to whether CentraCare's representations to the public establish or defeat the first "holding-out" element of the *Popovich* test. (*See* Mot. at 1.) Second, also as set forth above, Defendants have raised genuine issues of material fact for the jury to decide whether Plaintiff looked to and relied on CentraCare and the Hospital to choose his provider. (*See id.* at 2.) Based on the foregoing, summary judgment on this issue is inappropriate.

### III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment (ECF No. 65) is **DENIED.**
2. All prior consistent orders remain in full force and effect.

[continued on next page]

3. Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Date: September  29 , 2021

       *s/Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Thapa v. St. Cloud Orthopedic Assocs., Ltd., et al.*
Case No. 19-cv-2568 (TNL)